The **NATIONAL ASBESTOS WORK-ERS MEDICAL FUND, et al.,** Plaintiffs,

v.

**PHILIP MORRIS, INC.,** et al., Defendants.

**Blue Cross and Blue Shield of New Jersey, Inc., et al., Plaintiffs,**

v.

**Philip Morris, Incorporated, et al., Defendants.**

**H.K. Porter Company, Inc., Plaintiff,**

v.

**The American Tobacco Company, et al., Defendants.**

**Nos. 98 CV 1492, 98 CV 3287, 97 CV 7658.**

United States District Court, E.D. New York.

Nov. 1, 1999.

Dewey Ballantine LLP, New York City, by Paul J. Bschorr, Vincent R. FitzPatrick, Jr., Jack E. Pace III, Paul B. Carberry, Robert J. Morrow, Dewey Ballantine LLP, Washington, DC, by Martha J. Talley, for plaintiffs Blue Cross, et al.

Orrick, Herrington & Sutcliffe LLP, New York City, by James L. Stengel, Kazan, McClain, Edises, Simon & Abrams, Oakland, CA, by Steven L. Kazan, for plaintiff H.K. Porter Company.

Wachtell, Lipton, Rosen & Katz (in National Asbestos and Blue Cross), New York City, by Herbert M. Wachtell, Steven M. Barna, Kenneth B. Forrest, Barbara Robbins, Peter C. Hein, Arnold & Porter (in National Asbestos and Blue Cross), Washington, DC, by Murray R. Garnick, Winston & Strawn (in National Asbestos), Chicago, IL, by Dan K. Webb, Phillips, Lytle, Hitchcock, Blaine & Huber LLP, Buffalo, NY, by Paul F. Stecker, (in National Asbestos), Sedgwick, Detert, Moran & Arnold (in Blue Cross), San Francisco, CA, by Kevin J. Dunne, Sedgwick, Detert, Moran & Arnold (in Blue Cross), New York City, by James T. Conlon, for defendant Philip Morris, Incorporated.

Kirkland & Ellis (in National Asbestos), New York City, by Marjorie Press Lindblom, Sedgwick, Detert, Moran & Arnold, New York City, by David M. Covey, Kirland & Ellis, Washington, DC, by Kenneth N. Bass, Howard, Rice, Nemerovski, Canady, Falk & Rabkin (in Blue Cross), San Francisco, CA, by Peter J. Busch, for defendant Brown & Williamson Tobacco Corporation.

Greenberg Traurig, LLP (in National Asbestos and Blue Cross), New York City, by Alan Mansfield, Shook, Hardy & Bacon, LLP (in National Asbestos and Blue Cross), Kansas City, MO, by Gary R. Long, for defendants Lorillard Tobacco Company, Lorillard, Inc.

Debevoise & Plimpton (in National Asbestos and Blue Cross), New York City, by Steven Klugman, for defendant Council for Tobacco Research, U.S.A., Inc.

Law Offices of Peter G. Angelos, P.C., Baltimore, MD, by E. David Hoskins, David L. Palmer, Kenneth D. Pack, O'Donoghue & O'Donoghue, Washington, D.C., by Sally M. Tedrow, Louis P. Malone, Donald J. Capuano, for plaintiffs The National Asbestos Workers Medical Fund, et al.

Jacob, Medinger & Finnegan, LLP (in National Asbestos and Blue Cross), New York City, by Barry S. Schaevitz, for defendant Smokeless Tobacco Council, Inc.

Howard, Rice, Nemerovski, Canady, Falk & Rabkin (in Blue Cross), San Francisco, CA, by Peter J. Busch, Riker, Danzig, Scherer, Hyland & Perretti, LLP (in National Asbestos), Morristown, NJ, by Alan E. Kraus, Womble Carlyle Sandridge & Rice, PLLC (in National Asbestos), Winston–Salem, NC, by Thomas D. Schroeder, for defendants R.J. Reynolds Tobacco Co., and RJR Nabisco, Inc.

Chadbourne & Parke LLP, New York City, by Thomas J. McCormack, (in Blue Cross), Donald Strauber, (in National Asbestos), for defendant British American Tobacco (Investments) Limited (formerly known as British–American Tobacco Company Limited).

Simpson Thacher & Bartlett (in National Asbestos and Blue Cross), New York City, by Joseph McLaughlin, for defendant BAT Industries P.L.C.

Davis & Gilbert, LLP (in National Asbestos and Blue Cross), New York City, by Bruce M. Ginsberg, for defendant Hill & Knowlton, Inc.

Kasowitz, Benson, Torres & Friedman LLP (in National Asbestos and Blue Cross), New York City, by Michael M. Fay, for defendants Liggest Group Inc., Liggest & Myers, Inc., and Brooke Group Ltd.

Skadden, Arps, Slate, Meagher & Flom, LLP (in Blue Cross), New York City, by Peter J. McKenna, for defendant United States Tobacco Company.

Seward & Kissel, New York City, by Anthony R. Mansfield, for defendant The Tobacco Institute, Inc.

Greenberg Traurig, New York City, by Alan Mansfield, Stephen L. Saxl, for defendants Lorillard Tobacco Company, Philip Morris Incorporated, R.J. Reynolds Tobacco Company and Council for Tobacco Research–USA, Inc. in H.K. Porter.

Shook, Hardy & Bacon LLP, Kansas City, MO, by Gary R. Long, Gay Tedder, Andrew D. Carpenter, Bracewell & Patterson, LLP, Houston, TX, for defendants Lorillard Tobacco Company and Philip Morris Incorporated in H.K. Porter.

Riker Danzig Scherer Hyland & Perretti, Morristown, NJ, Womble, Carlyle, Sandridge & Rice PLLC, Winston–Salem, NC, for defendant R.J. Reynolds Tobacco Company in H.K. Porter.

Kirkland & Ellis, New York City, by Marjorie P. Lindblom, Peter Bellacosa, for defendant Brown & Williamson Tobacco Corp (individually and as successor by merger to The American Tobacco Company) in H.K. Porter.

Seward & Kissel LLP, New York City, by Donovan Wickline, for defendant The Tobacco Institute, Inc. in H.K. Porter.

### MEMORANDUM

WEINSTEIN, Senior District Judge.

### TABLE OF CONTENTS

| | | |
|---|---|---|
| I | FACTS | 143 |
| | A. *Blues* | 143 |
| | B. *National Asbestos* | 143 |
| | C. *H.K. Porter* | 144 |
| II | PROCEDURE | 144 |
| | A. *Blues* and *National Asbestos* | 144 |
| | B. *H.K. Porter* | 145 |
| III | SECTION 1292(b) CERTIFICATION | 145 |
| | A. Final Judgment Rule | 146 |
| | 1. History | 146 |

     2. Policies .................................................. 148
  B. Exceptions .................................................. 152
     1. Collateral Orders ...................................... 152
     2. Final Orders Under Rule 54(b) ......................... 153
     3. Interlocutory Injunctions Under Section 1292(a)(1) ..... 155
     4. Mandamus .............................................. 157
     5. Class Certification Orders Under Rule 23(f) ............ 160
     6. Other Exceptions ...................................... 161
  C. Interlocutory Orders Under Section 1292(b) ................. 161
     1. History ................................................ 161
     2. Discretion of District Court .......................... 162
       a. Legislative History ............................... 162
       b. Statutory Design .................................. 163
       c. Case Law ......................................... 164
       d. Relationship to Rule 54(b) ........................ 165

IV  DEFENDANTS' SECTION 1292(b) CERTIFICATION MOTIONS ............. 166

V  CONCLUSION ................................................... 168

The defendants in these three separate, though related, cases are the major tobacco product manufacturers and associated entities ("Tobacco"). Following orders denying motions to dismiss in each case, they sought certifications permitting interlocutory appeals. *See* 28 U.S.C. § 1292(b). Certifications were denied by orders of October 13, 1999; this memorandum explains the reasons for those orders.

Defendants contend that, as a matter of law, the district court must certify under section 1292(b) of title 28 to permit interlocutory appeals from the orders denying their motions to dismiss. An examination of the history, theory and practice of the final judgment rule and its exceptions demonstrates that this position is untenable.

The final judgment rule provides a stout barrier to interlocutory appeals such as the ones defendants now seek. In any particular case, the exceptions permitting an early appeal encourage a dialogue between the trail and appellate courts on the desirability of a departure from the final judgment rule. It is the opinion of this court that interlocutory appeals from its orders denying the motions to dismiss are not desirable.

## I. FACTS

### A. *Blues*

In *Blue Cross & Blue Shield v. Philip Morris, Inc.* ("*Blue Cross*"), the plaintiffs ("the Blues") are medical provider-insurer Blue Cross plans from across the United States alleging violations of both federal and state law. *See Blue Cross and Blue Shield v. Philip Morris, Inc.*, 36 F.Supp.2d 560 (E.D.N.Y.1999). Federal causes of action are brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and federal antitrust statutes. Supplemental state law claims are asserted under various state statutes and common-law theories.

### B. *National Asbestos*

In *National Asbestos Workers Medical Fund v. Philip Morris, Inc.* ("*National Asbestos*"), the plaintiffs are self-insured ERISA trust funds which provide health care insurance to union workers in the building trades. *See National Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 23 F.Supp.2d 321 (E.D.N.Y.1998). Plaintiffs seek damages to trust assets allegedly caused by Tobacco. Federal causes of action are brought under RICO, ERISA and federal common-law theories of unjust enrichment, restitution, indemnity, and breach of assumed duty.

## C. *H.K. Porter Company, Inc.*

In *H.K. Porter Company, Inc. v. American Tobacco Co.* ("*H.K.Porter*"), plaintiff is an asbestos distributor that had previously been sued in extensive litigation for injuries resulting from its products. It has paid substantial sums in both settlements and judgments after trials. It brings this suit under RICO and a number of state law theories, including fraud, contribution, and restitution. Its claim is that some or all of the damages it paid were in fact caused by Tobacco. Among other theories, plaintiff contends that it would have impleaded the defendants in many cases had the defendants not fraudulently concealed their own liability for damages.

## II. PROCEDURE

### A. *Blue* and *National Asbestos*

Defendants sought dismissal of both *Blue Cross* and *National Asbestos*. The thrust of defendants' motions to dismiss was that *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229 (2d Cir.1999), *superseding* 172 F.3d 223 (2d Cir.1999), rejects the plaintiffs' federal causes of action and requires dismissal of all state law claims for lack of jurisdiction. *Laborers Local 17* held that the plaintiffs' injuries in that case were too remote—i.e., were not proximately caused—to support a cause of action under RICO.

Several relevant distinctions between *Laborers Local 17* and these two cases made dismissal at the pleadings stage imprudent. First, "[t]he legal concept of proximate causation mandates a multi-faceted and highly fact specific inquiry." *National Asbestos Workers Med. Fund v. Philip Morris, Inc.*, Nos. 98 CV 1492, 98 CV 3287, 1999 WL 706113, at *3 (E.D.N.Y. Sept. 7, 1999) ("[T]he infinite variety of claims that may arise make it virtually impossible to announce a black-letter rule that will dictate the result in every case. Instead, previously decided cases identify factors that circumscribe and guide the exercise of judgment in deciding whether the law affords a remedy in specific circumstances." (quoting *Associated Gen. Contractors, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 536–37, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983))). In that vein, "a number of unique features of the Blue Cross plaintiffs and their injuries which are relevant to the proximate cause analysis" were noted. *Id.* at *5. Principle among these was that the Blues are not merely traditional passive health insurers; rather, they play a major, active and direct role in the provision of health care benefits in the United States. *Id.* The Blues are the largest provider of managed health care in the United States; economic injury to the Blues and their tens of millions of clients is arguably a foreseeable—and direct—result of the defendants' alleged racketeering activity. Extensive financial damage to the Blues may place the American health-care system in jeopardy. *See* Gregory P. Joseph, *RICO Causation*, Nat'l L.J., Nov. 1, 1999, at B19.

Second, unlike the plaintiffs in *Laborers Local 17*, which relied only on direct "RICO" claims, the plaintiffs in both *Blue Cross* and *National Asbestos* set forth a "valid, alternative basis for recovery," pleading RICO causes of action under a theory of subrogation. Defendants have sought dismissal of the subrogation claims, arguing that the plaintiffs did not have standing because the subrogated injuries were not based on "business or property" losses as required for standing to sue under RICO. *See* 18 U.S.C. § 1964(c) (RICO confers standing to sue on "[a]ny person injured in his business or property by reason of" racketeering acts defined in the statute.). Defendants' motions for dismissal before trial were rejected because the "[v]ictims of racketeering who have been deprived of their monetary resources as a direct result of racketeers' predicate acts should, under the most natural interpretation of the phrase 'business *or property*,' recover their pecuniary losses." *National Asbestos Workers Med. Fund*, Nos.

98 CV 1492, 98 CV 3287, 1999 WL 706113, at *8 (emphasis added).

Defendants subsequently moved for certifications permitting interlocutory appeals. *See* 28 U.S.C. § 1292(b).

## B. *H.K. Porter*

Defendants moved to dismiss H.K. Porter's suit claiming that *Laborers Local 17* foreclosed the action. On August 11, 1999, defendants' motion was denied in part relying on the reasons set out in *National Asbestos Workers Medical Fund*, Nos. 98 CV 1492, 98 CV 3287, 1999 WL 706113, at *16–17, discussed above.

Defendants' motion was also denied because the RICO-related issues raised in the present action are substantially different from those in *Laborers Local 17*. Plaintiff's claims here are based on an allegation of fraud in actual litigations resulting in excessive damages being paid by plaintiff. This charge, if true, arguably constitutes a direct injury to plaintiff, actionable under RICO. With respect to the non-RICO claims, defendants' argument of federal preemption by the Cigarette Labeling and Advertising Act was rejected because the Act "does not apply to the deliberate acts to deceive alleged by plaintiff." *H.K. Porter Co., Inc. v. American Tobacco Co.*, 71 F.Supp.2d 73, 75 (E.D.N.Y.1999).

Defendants subsequently moved for certification permitting an interlocutory appeal. *See* 28 U.S.C. § 1292(b).

## III SECTION 1292(b) CERTIFICATION

█ Section 1292(b) of title 28 provides a mechanism for permissive appeals of non-final orders that are otherwise not appealable as of right under section 1291. *See* 28 U.S.C. § 1292(b). It "confer[s] on district courts first line discretion to allow interlocutory appeals." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 47, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995).

█ To take an appeal under section 1292(b) from an interlocutory order the moving party must meet three statutory criteria: (1) a controlling question of law, (2) that involves a substantial ground for difference of opinion, (3) the resolution of which by the court of appeals will materially advance the termination of the dispute. The district court must then certify that, in its opinion, these criteria are satisfied. Finally, the court of appeals must agree to hear the appeal. The provision reads in relevant part:

> When a district judge, when making in a civil action an order not otherwise appealable under [section 1292], shall be of the opinion that such order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he *shall* so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within 10 days after the entry of the order....

28 U.S.C. § 1292(b) (emphasis added).

█ Establishing the three criteria is not sufficient to guarantee an interlocutory appeal. The court of appeals may still refuse to hear the case in its full discretion "for any reason." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) ("The appellate court may deny the [interlocutory] appeal for any reason, including docket congestion.") (footnote omitted).

Defendants' motions for certification raise a serious question, namely, whether the district court, like the court of appeals, has unfettered discretion to deny certification where the statutory criteria are satisfied. It is defendants' assertion—relying on the repeated use of the word "shall" in the provision—that if the statutory criteria are met the district court must certify

the order for interlocutory appeal. *See* Defs.' Suppl.Mem.Supp.Cert. at 1–2. Consideration of the historic policy against piecemeal appeals embodied in the final judgment rule, as well as review of the legislative history and design of section 1292(b), leads to a contrary conclusion.

■ District courts do have independent and "unreviewable" authority to deny certification even where the three statutory criteria are met. *See, e.g., Executive Software N. Am., Inc. v. U.S. Dist. Ct.,* 24 F.3d 1545, 1550 (9th Cir.1994) ("Even if the remand order meets the section 1292(b) criteria, the district court must agree to certify the order (a decision that itself is unreviewable), and the court of appeals must exercise its discretion to entertain the action before a section 1292(b) appeal can proceed."; but mandamus was issued to consider the limited power to deny pendent jurisdiction under the then newly adopted 28 U.S.C. § 1367, particularly because district court did not give any reason for denying jurisdiction).

### A. Final Judgment Rule

#### 1. History

A cornerstone of the federal judicial system, defining the institutional relationship of the district and appellate courts, is the final judgment rule. This principal has been a part of the federal court system since its inception, having been adopted by the Judiciary Act of 1789. *See Cobbledick v. United States,* 309 U.S. 323, 324, 60 S.Ct. 540, 84 L.Ed. 783 (1940) ("Finality as a condition of review is an historic characteristic of federal appellate procedure.").

Three sections of the 1789 Act provided for appeal from final judgments, making no exception for interlocutory appeals. *See* Robert J. Martineau, *Defining Finality and Appealability by Court Rule: Right Problem, Wrong Solution,* 54 U.Pitt.L.Rev. 717, 726–27 (1993). The sections providing for appeal from final judgments were:

[Section 21]:[F]rom final decrees in a district court in causes of admiralty and maritime jurisdiction, where the matter in dispute exceeds the sum of value of three hundred dollars, exclusive of costs, an appeal shall be allowed to the next circuit court....

[Section 22]:[F]rom final decrees and judgments in civil actions in a district court, where the matter in dispute exceeds the sum or value of fifty dollars, exclusive of costs, may be re-examined, and reversed or affirmed in a circuit court ... upon a writ of error ... [a]nd upon a like process, may final judgments and decrees in civil actions, and suits in equity in a circuit court ... where the matter in dispute exceeds the sum or value of two thousand dollars, exclusive of costs, be re-examined and reversed or affirmed in the Supreme Court.

[Section 25]:[A] final judgment or decree in any suit, in the highest court of law or equity of a State in which a decision in the suit could be had ... may be re-examined and reversed or affirmed in the Supreme Court of the United States upon a writ of error....

Judiciary Act of 1789, 1 Stat. 73 (1789).

The final judgment rule had already become a basic feature of Anglo–American jurisprudence by the time the first Congress created the federal judiciary and expressly adopted the rule in 1789. English common-law courts had long required a final disposition of an entire controversy before any form of appellate review would lie. *But see* Martineau, *supra,* 54 U.Pitt.L.Rev. at 727; *cf. id.* ("On the equity side of the English court system, however, the courts of chancery allowed free resort to interlocutory review."). The basis for the English common-law courts adopting the final judgment rule was primarily formalistic. *See* 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3906, at 265 (2d ed.1992) (citing Carleton M. Crick, *The Final Judgment as a Basis for Appeal,* 41 Yale L.J. 539, 544 (1932)).

At English common law an appellate court was required to consider the entire record. John C. Nagel, Note, *Replacing the Crazy Quilt of Interlocutory Appeals Jurisprudence with Discretionary Review*, 44 Duke L.J. 200, 202 (1994). This requirement made appeals to the King's Bench physically "problematic because it was difficult for the King's Bench and the trial court to review the [same] record simultaneously." *Id.*

■ In its current manifestation the final judgment rule provides in pertinent part:

> The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

28 U.S.C. § 1291. The rule requires "that 'a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits.'" *Flanagan v. United States*, 465 U.S. 259, 263, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984) (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981)). The Supreme Court has repeatedly held that the "policy of Congress embodied in [the final judgment rule of section 1291] is inimical to piecemeal appellate review of trial court decisions which do not terminate the litigation[.]" *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982).

Though the final judgment rule has been a part of the federal court system since it was founded, both the Supreme Court and the lower federal courts have long struggled to devise a comprehensive definition of finality. In 1892 the Supreme Court noted that "no question of equity practice has been the subject of more frequent discussion in this Court than the finality of decrees.... The cases, it must be concluded, are not all together harmonious." *McGourkey v. Toledo & Ohio Central Ry. Co.*, 146 U.S. 536, 544–45, 13 S.Ct. 170, 36 L.Ed. 1079 (1892). Not until 1945—over a century and a half after the final judgment rule was first adopted—did the Supreme Court venture a full definition. *See Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). In *Catlin*, the Supreme Court defined a final judgment as "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Id.; see, e.g., Van Cauwenberghe v. Biard*, 486 U.S. 517, 521, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988) (same); *Taylor v. Board of Educ.*, 288 F.2d 600, 602 (2d Cir.1961) ("A 'final decision' within 28 U.S.C. § 1291, the basic statute authorizing appeals to the courts of appeals, and its predecessors going back to §§ 21 and 22 of the Act of Sept. 24, 1789, 'is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" (quoting *Catlin*, 324 U.S. at 233, 65 S.Ct. 631)).

While this understanding of a final judgment seems straightforward, its application has not always been easy. Justice Black commented that "whether a ruling is 'final' within the meaning of § 1291 is frequently so close a question that decision of that issue either way can be supported with equally forceful arguments, and ... it is impossible to devise a formula to resolve all marginal cases coming within what might well be called the 'twilight zone' of finality." *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 152, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964); *see also F.T.C. v. Minneapolis–Honeywell Regulator Co.*, 344 U.S. 206, 215, 73 S.Ct. 245, 97 L.Ed. 245 (1952) (Black, J., dissenting) (commenting in reference to judgments that "there is no more ambiguous word [than final] in all the legal lexicon").

Historical disputes over what constitutes a final judgment have to a large extent been resolved by a deep accretion of case

law. In "almost all situations it is entirely clear, either from the nature of the order or from a crystallized body of decisions, that a particular order is or is not final." Charles Alan Wright, *Law of Federal Courts* 741 (5th ed.1994); *see Building Indus. Ass'n v. Babbitt*, 161 F.3d 740, 742 (D.C.Cir.1998) ("The determination of what constitutes a final decision is not normally a difficult one."); *see, e.g., Pacific Union Conference of Seventh–Day Adventists v. Marshall*, 434 U.S. 1305, 98 S.Ct. 2, 54 L.Ed.2d 17 (1977) (order denying summary judgment not final); *Indian Oasis–Baboquivari Unified Sch. Dist. No. 40 v. Kirk*, 109 F.3d 634 (9th Cir.1997) (en banc) (order dismissing some claims without leave to amend and some with leave to amend not final). *But see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("No verbal formula yet devised can explain prior finality decisions with unerring accuracy or provide an utterly reliable guide for the future.").

The understanding of the district court judge is often critical. In order to determine if a final judgment has issued, the court of appeals for the Second Circuit generally looks for some "clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as it is concerned, is the end of the case." *Fiataruolo v. United States*, 8 F.3d 930, 937 (2d Cir.1993) (court of appeals takes "a practical view of both the wording of the judgment and the surrounding circumstances").

## 2. Policies

Many of the institutional values underlying our federal court system are promoted by the final judgment rule. *See generally* Edward H. Cooper, *Timing as Jurisdiction: Federal Civil Appeals in Context*, 47 Law & Contemp.Probs. 157 (1984). These include efficiency, deference, and justice. *Aluminum Company of America v. Beazer East, Inc.*, 124 F.3d 551, 561 (3d Cir. 1997) (final judgment rule "minimiz[es] the possibility of piecemeal appeals, accord[s] due deference to trial court judges, and promot[es] the conservation of judicial resources"); *see generally* 15A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, *supra*, § 3907, at 268–284; 19 James Wm. Moore et al., *Moore's Federal Practice* § 202.03, at 202–13 to 15 (3d ed.1999).

The rule ensures the efficient use of judicial resources. *See Eisen*, 417 U.S. at 170, 94 S.Ct. 2140; *Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Restaurants, Inc.)*, 754 F.2d 811, 815 (9th Cir. 1985) ("[O]ne of the most compelling reasons for the finality rule is the avoidance of unnecessary appeals and interruptions of trial, thereby saving judicial time and expense."). "From the very foundation of our judicial system the object and policy of the acts of Congress in relation to appeals and writs of error ... have been to save the expense and delays of repeated appeals in the same suit, and to have the whole case and every matter in controversy in it decided in a single appeal." *McLish v. Roff*, 141 U.S. 661, 665–66, 12 S.Ct. 118, 35 L.Ed. 893 (1891). Delaying appellate review until trial court proceedings are complete prevents multiple appeals that may ultimately prove unnecessary. Many issues that a party may seek to appeal before a final decision may become moot upon the disposition of the case on the merits. *See J.B. Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 380, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987) (pretrial appeals "burden appellate courts by requiring immediate consideration of issues that may become moot or irrelevant by the end of trial"). Either the party may win on all or part of the substantive issues, thus obviating the need for any appeal, or the party may lose on the merits but on grounds unrelated to the earlier claims of error that would have served as the basis for an interlocutory appeal.

Repeated interlocutory appeals in the same case would also stretch the already

limited resources of the courts of appeals. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 471, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). ("The finality requirement in § 1291 evinces a legislative judgment that '[r]estricting appellate review to "final decisions" prevents the debilitating effect on judicial administration caused by piecemeal appeal disposition of what is, in practical consequence, but a single controversy.'" (quoting *Eisen,* 417 U.S. at 170, 94 S.Ct. 2140)).

Unlike the trial judge, appellate judges do not have the benefit of watching and controlling the action as it unfolds before them. As a result, appellate judges would be forced to make repeated expenditures of significant time and energy in understanding the factual and legal issues involved in the case. The burden on the appellate judges is increased when different panels of the court of appeals hear the successive appeals. As federal courts encounter increasing numbers of suits involving more complex questions of law and fact, the expenditure of appellate court time and resources necessary to address multiple appeals from a single case would be excessive. This is a matter of particular concern given the limited number of appellate court judges in relation to the continually growing case load of the federal courts. *See Flanagan,* 465 U.S. at 264, 104 S.Ct. 1051 (final judgment rule "is crucial to the efficient administration of justice"); *Firestone Tire,* 449 U.S. at 374, 101 S.Ct. 669 (final judgment rule "serves the important purpose of promoting efficient judicial administration").

A second goal of the final judgment rule is preservation of the distinct and vital role of the trial judge in the federal system. As the Supreme Court has noted, the final judgment rule

emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial. Permitting piecemeal appeals would undermine

the independence of the district judge, as well as the special role that individual plays in our judicial system.

*Firestone Tire,* 449 U.S. at 374, 101 S.Ct. 669; *see Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 430, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) (final judgment rule "emphasiz[es] the deference appellate courts owe to the district judge's decisions on the many questions of law and fact that arise before judgment"; immediate interlocutory review "would also undermine the ability of district judges to supervise litigation"); *Flanagan,* 465 U.S. at 263–64, 104 S.Ct. 1051 (final judgment rule "helps preserve the respect due trial judges by minimizing appellate-court interference with the numerous decisions they must make in the prejudgment stages of litigation"). An erosion of the independence of the trial bench would be threatened were non-final appeals to multiply because they "make it more difficult for trial judges to do their basic job—supervising trial proceedings." *Johnson v. Jones,* 515 U.S. 304, 309, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).

The final judgment rule also ensures that district and appellate judges cooperate effectively within their respective spheres as independent Article III jurists. *See In re Sambo's Restaurants, Inc.* 754 F.2d at 814 ("[M]any of the principle reasons for the finality requirement are based on maintaining the proper relationship between trial and appellate courts."); 15A Wright et al., *Federal Practice and Procedure, supra,* § 3907, at 269 (final judgment rule has a "dramatic impact on the allocation of power between district courts and the courts of appeals"); *cf.* Henry J. Friendly, *Indiscretion About Discretion,* 31 Emory L.J. 747, 757 (1982) ("In many cases the trial judge's opinion will help to focus the controversy."). It "embodies the substantive policy that legal issues should be developed initially before the district courts." *State of California v. Harvier,* 700 F.2d 1217, 1219 (9th Cir.1983). As one commentator has noted, the final judgment rule "carve[s] out a space within which

federal trial judges may, indeed should, explore innovative paths to justice in difficult cases without having to ask the circuit's permission." Burt Neuborne, *Innovation in the Interstices of the Final Judgment Rule: A Demurrer to Professor Burbank,* 97 Colum.L.Rev.2091, 2092 (1997) ("And district judges, operating in the discretionary space created by the final judgment doctrine, must decide whether to innovate in search of justice in a particular case or to restrict themselves to anticipating a conventional circuit outcome."). It also embodies the notion that district court judges must have maximum flexibility in managing the litigation. *See* Federal Judicial Center, *Manual for Complex Litigation* § 33.22, at 312 (3d ed. 1995) ("When responsibility for numerous related cases is centralized in a single judge, continuous, active case management is imperative.").

This emphasis on discouraging federal interlocutory appeals stands in contrast to the approach pursued in a number of state court systems. In New York, for example, a party can appeal almost any interlocutory trial court order that relates to the merits of the case or that affects a substantial right. *See* N.Y.C.P.L.R. § 5701(a)(2)(iv), (v). This broad interlocutory review creates a significantly different relationship between the trial and appellate courts in New York than exists in the federal system. The Appellate Division plays an active role in supervising the pretrial practice since most significant orders become subject to immediate reconsideration on appeal. This process is consistent with the intent of the New York legislature. It "created the appellate division with the intent that it have broad power over the lower courts." David Scheffel, Note, *Interlocutory Appeals in New York—Time Has Come for a More Efficient Approach,* 16 Pace L.Rev. 607, 639 (1996). Yet, the results are substantial restrictions on the independence of the able New York trial bench, delays in final decisions and increased costs of litigation. *See, e.g.,* Harold L. Korn et al., *New York Civil Practice* § 5701.03, at 57–9 (1999) (many Appellate Division Justices believe "that intermediate appeals create drawn out, piecemeal litigation, and present opportunities for abuse by litigants who can use appeals as a means to delay the ultimate resolution of the action and to harass their opponents," and "contribute to burdensome caseloads in the Appellate Division"); Oscar Chase & Robert A. Barker, *Civil Litigation in New York* § 1104, at 456 (2d ed. 1990) ("The New York rule is [ ] problematic because frequent interlocutory appeals contribute to extraordinarily heavy case loads carried by the Appellate Division and make careful deliberation of each case very difficult.").

Congress never intended the courts of appeals to exercise broad supervisory power over the day-to-day operations of district courts. *See* Scheffel, *supra,* at 639 n. 255 ("The circuit courts supervise the district courts more through the 'law of the circuit' rule as opposed to interlocutory review. Essentially, the 'law of the circuit' rule 'binds the district courts to the decisions of their particular circuits.'" (internal citations omitted)). Rather, Congress adopted the final judgment rule to permit district judges to be part of the vanguard of the federal court system, with the flexibility to reconcile traditional legal principles with ever more complicated and diverse factual situations. *See* Neuborne, *supra,* at 2097 ("[T]he discretionary space carved out by the final judgment rule is an ideal arena for experimentation in aid of just outcomes precisely because it is constrained by an eventual appeal, and is highly unlikely to affect the law without acceptance by other judges.").

It is not desirable in our complex and changing world to restrict innovation and flexibility to the appellate level. There are benefits in the development of both procedural and substantive law that flow from the district judge's awareness of, among other things, the case management demands of particular categories of disputes.

*See* Federal Judicial Center, *supra*, § 33.2, at 309 (noting that while "some of the methods used [in managing mass tort cases] have not been considered, much less approved, by appellate courts," "the absence of precedent should not foreclose innovation and creativity" by the trial judge; "Indeed, the lack of such solutions makes innovation and creativity imperative if the aim of the Federal Rules of Civil Procedure, the 'just, speedy, and inexpensive determination of every action' is to be realized.").

Thus, by preserving independent spheres of authority for the trial and for the appellate courts, the final judgment rule ensures that the law will continue to evolve to meet the changing needs of our modern society in a way that incorporates the day-to-day hands-on experiences of district judges. *See Peter Pan Fabrics, Inc. v. Dixon Textile Corp.*, 280 F.2d 800, 805 (2d Cir.1960) (en banc) (Clark, J., dissenting) ("A district judge's orders advancing a case to trial ought not to be critically examined and re-examined by the cumbersome method of appeal before he has approached the state of adjudication."); *see also* Fed.R.Civ.P. 16.

A third goal served by the final judgment rule is the prevention of unnecessary delay or harassment of parties. *See Flanagan*, 465 U.S. at 264, 104 S.Ct. 1051 (the final judgment rule "reduces the ability of litigants to harass opponents and to clog the courts through a succession of costly and time-consuming appeals"). Justice Frankfurter may have captured the explanation best when he wrote:

> Since the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice, Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. Thereby is avoided the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment. To be effective, judicial administration must not be leaden-footed. Its moment would be arrested by permitting separate review of the component elements in a unified cause.

*Cobbledick*, 309 U.S. at 325, 60 S.Ct. 540; *see Firestone Tire*, 449 U.S. at 374, 101 S.Ct. 669.

The harm resulting from delay through interlocutory appeals is magnified in cases of heightened public concern. *Cf. Bryant v. Sylvester*, 57 F.3d 308, 311 n. 4 (3d Cir.1995) ("[I]n cases where the litigants may have unequal economic resources, [the final judgment rule] protects the judicial process and its participants from the delay which can prove advantageous to a well-financed litigant, and fatal to the less well-endowed." (quoting *Lusardi v. Xerox Corp.*, 747 F.2d 174, 177 (3d Cir.1984))). For example, modern mass torts cases have the potential to involve injuries to thousands of individuals who may have suffered lost work, physical injury, or even death through the use of a dangerous product or exposure to a toxic substance. These cases grow in size and intricacy as our modern economy continues to reward manufacturers for capturing large market shares, creating a potential for exposing countless individuals to possible harm. *See generally* Deborah R. Hensler & Mark A. Peterson, *Understanding Mass Personal Injury Litigation: A Socio–Legal Analysis*, 59 Brook.L.Rev. 961, 1015 (1993). Delays in such cases add to the confusion and isolation victims suffer as a result of their injuries. This is aggregated by the fact that the injured victims seldom, if ever, have direct contact with the attorneys who could otherwise address their concerns on an individualized basis. *Cf. Blue Cross and Blue Shield v. Philip Morris, Inc.*, 53 F.Supp.2d 338, 346 (E.D.N.Y. 1999) ("Courts must be particularly sensitive to the feelings of lay people about

what constitutes justice in these mass [tort] cases that are widely discussed.").

## B. Exceptions

Although the final judgment rule has governed our federal court system for over two centuries, the Supreme Court and Congress have created limited exceptions. *See generally* Robert J. Martineau, *Appellate Practice and Procedure* 116–205 (1987). The common threads running through each of these exceptions are the narrowness of their reach and the desirability of input from both the trial and appellate bench in controlling their use.

### 1. Collateral Orders

█ The collateral order doctrine was first announced by the Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). It allows an immediate appeal as of right for that *"small class* [of trial court orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. 1221 (emphasis added). "To fall within the exception, an order must at a minimum satisfy three conditions: It must 'conclusively determine the disputed question,' 'resolve an important issue completely separate from the merits of the action,' and 'be effectively unreviewable on appeal from a final judgment.'" *Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 431, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)).

Courts have repeatedly emphasized that the collateral order doctrine is a "narrow exception" to the final judgment rule. *See, e.g., Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994) ("[W]e have repeatedly stressed that the 'narrow exception' [created by the collateral order doctrine] should stay that way and never be allowed to swallow the general rule, that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated."); *Bryant*, 57 F.3d at 311 ("Strict construction of the collateral order doctrine is designed to further the long-standing Congressional policy against piecemeal appeals which underlies the final judgment rule."), *cert. granted and vacated on other grounds*, 516 U.S. 1105, 116 S.Ct. 899, 133 L.Ed.2d 834 (1996); *Germain v. Connecticut Nat. Bank*, 930 F.2d 1038, 1040 (2d Cir.1991) (collateral order exception "is in derogation of the federal policy against piecemeal appeals and hence is confined within strict limits"); *Spiess v. C. Itoh & Co.*, 725 F.2d 970, 975 (5th Cir.1984) ("We have stated that the *Cohen* [collateral order] doctrine 'should be strictly construed' ... *and have likewise narrowly restricted other exceptions to the final judgment rule.*" (emphasis added) (citations omitted)); *Bever v. Gilbertson*, 724 F.2d 1083, 1087 (4th Cir.1984) ("[T]he collateral order exception is a narrow one and reserved for rare cases."). In fact, the Supreme Court has generally characterized the collateral order doctrine as more a "practical construction" of the final judgment rule than an "exception" from it. *See, e.g., Swint v. Chambers County Comm'n*, 514 U.S. 35, 41–42, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995); *Digital Equip. Corp.*, 511 U.S. at 867, 114 S.Ct. 1992.

█ Only orders that involve a significant right that will be irretrievably lost absent an immediate appeal satisfy the collateral order doctrine. *See* Martineau, *supra*, 54 U.Pitt.L.Rev. at 742. Included are orders that deny a motion for reduced bail, deny intervention, deny security for expenses and attorneys fees, deny a motion to dismiss based on a claim of absolute or qualified immunity, and deny a motion to dismiss based on double jeopardy. *See Stack v. Boyle*, 342 U.S. 1, 6, 72 S.Ct. 1, 96 L.Ed. 3 (1951) (bail); *Stringfellow v. Con-*

*cerned Neighbors in Action,* 480 U.S. 370, 377, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987) (intervention); *Cohen,* 337 U.S. at 547, 69 S.Ct. 1221 (security); *Nixon v. Fitzgerald,* 457 U.S. 731, 742, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (absolute immunity); *Mitchell v. Forsyth,* 472 U.S. 511, 524–30, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (qualified immunity); *Abney v. United States,* 431 U.S. 651, 659, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (double jeopardy).

The Supreme Court has emphasized that the collateral order doctrine is subservient to the section 1292(b) procedure, which requires permission of the district judge, writing:

> If courts of appeals had discretion to append to a *Cohen*-authorized appeal from a collateral order further rulings of a kind neither independently appealable nor certified by the district court, then the two-tiered arrangement § 1292(b) mandates would be severely undermined.

*Swint,* 514 U.S. at 47, 115 S.Ct. 1203 (footnote omitted).

### 2. Final Orders Under Fed.R.Civ.P. 54(b)

Another narrow exception to the final judgment rule is provided by Rule 54(b) of the Federal Rules of Civil Procedure. It empowers a district judge to enter a final judgment for one or more but less than all the claims in a suit, or as to one or more but less than all the parties in the action.

> Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which ad-

judicates less than all the claims shall not terminate the action as to any of the claims or parties. . . .

Fed.R.Civ.P. 54(b).

Rule 54(b) was promulgated as a method of partially controlling the liberal joinder of claims and parties allowed under the federal rules. *See Dickinson v. Petroleum Conversion Corp.,* 338 U.S. 507, 511–12, 70 S.Ct. 322, 94 L.Ed. 299 (1950). Expanded joinder rules allowed more complicated litigation with more distinct factual and legal issues. "The basic purpose of Rule 54(b) is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available." 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure, supra,* § 2654, at 33 (footnote omitted); *see Collins v. Metro–Goldwyn Pictures Corp.,* 106 F.2d 83, 85 (2d Cir.1939) ("The new Rules provide for the presentation of numerous claims and the participation of multiple parties in a single action. . . . It is evident that the court must be given extensive *discretionary powers* in order to expedite a determination of the issues and avoid delay and inconvenience. . . . Rule 54(b) conferring power to enter separate judgment at various stages appear[s] to have been designed to meet the difficulties arising from these liberal joinder provisions." (emphasis added)).

■ The basic thrust of the final judgment rule is not deflected by Rule 54(b). The rule does not allow an immediate appeal on a claim until a final judgment is reached on that claim. *See Liberty Mut. Ins. Co. v. Wetzel,* 424 U.S. 737, 742–43, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976); *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 435, 76 S.Ct. 895, 100 L.Ed. 1297 (1956) ("[Rule 54(b) ] does not relax the finality required of each decision, as an individual claim, to render it appealable, but it does provide a practical means of permitting an

appeal to be taken from one or more final decisions on individual claims, in multiple claims actions, without waiting for final decisions to be rendered on *all* the claims in the case." (emphasis in original)).

A restrictive use of Rule 54(b) furthers the policies underlying the final judgment rule. *See, e.g., L.B. Foster Co. v. America Piles, Inc.*, 138 F.3d 81, 86 (2d Cir.1998) ("Respect for the 'historic federal policy against piecemeal appeals' requires that [Rule 54(b) ] certification not be granted routinely."). It ensures the efficient and orderly administration of judicial resources by restricting appeals to cases involving sufficiently distinct claims. *See, e.g., Williams v. St. Louis Diecasting Corp.*, 611 F.2d 1223, 1224–25 (8th Cir.1979) (Rule 54(b) does not apply where the district court certifies liability issue arising from bifurcated trial while continuing to seek an appropriate remedy because liability and remedy were part of a single claim).

The claims must arise from a distinct factual predicate or must provide distinct legal theories, each allowing a recovery which is not mutually exclusive of the other claims. *Compare Cullen v. Margiotta*, 811 F.2d 698, 712 (2d Cir.1987) (RICO claims sufficiently distinct from civil rights claims even though the two claims arose from the same common facts because the elements of each offense were different and the potential recoveries were different), *with General Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1032 (6th Cir.1994) (three liability theories brought by target of corporate takeover to recover costs of defending against takeover and to disgorge fees earned from disclosure of confidential information were not sufficiently distinct to allow an appeal under Rule 54(b) because all theories required recovery for a common injury).

The requirement that the claims be either factually or legally distinct ensures that the court of appeals is not forced to review identical facts or identical legal issues in multiple appeals. *See, e.g., Para-*

*Chem S., Inc. v. M. Lowenstein Corp.*, 715 F.2d 128, 132 (4th Cir.1983) (possibility of repetitive appellate review not sufficiently foreclosed to justify certification of the judgment as final under Rule 54(b)); *Explosives Supply Co., Inc. v. Columbia Nitrogen Corp.*, 691 F.2d 486, 486–87 (11th Cir.1982) (certification appropriate because court of appeals would not need to review same issues nor same facts on separate appeals given the distinct nature of the claims); *Arlinghaus v. Ritenour*, 543 F.2d 461, 464 (2d Cir.1976) (certification improper because court of appeals would likely have to review same conduct twice). Even where the claims are sufficiently distinct, the court of appeals for the Second Circuit has advised that appeals under Rule 54(b) should be allowed "only in the infrequent case where there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *L.B. Foster Co.*, 138 F.3d at 86 (internal quotation marks omitted). These restrictions guarantee that appeals under Rule 54(b) do not burden the limited resources of the court of appeals.

In accordance with the general theory of finality, Rule 54(b) preserves the independence of trial court judges. Under the rule, "the District Court is used as a 'dispatcher.' It is permitted to determine, in the first instance, the appropriate *time when each 'final decision'* upon 'one or more but less than all' of the claims in a multiple claims action is ready for appeal." *Sears, Roebuck & Co.*, 351 U.S. at 435, 76 S.Ct. 895 (emphasis in original). This requirement ensures that the trial bench retains its power to manage the case based on the needs of the court and the parties in the particular matter. *See Building Indus. Ass'n v. Babbitt*, 161 F.3d 740, 743 (D.C.Cir.1998) ("[T]he placement of this decision in the discretion of the district court is a wise one, as that court is 'the one most likely to be familiar with the case and with any justifiable reasons for delay.'" (quoting *Sears, Roebuck & Co.*, 351 U.S. at 437, 76 S.Ct. 895)).

The independence of the district judge is assured because denial of certification is not subject to appellate review. Moreover, by vesting the district court judge with discretion to determine whether a claim should be certified as a final order before resolution of the entire case, Rule 54(b) actually enhances the authority of the trial bench in managing the case, for the trial judge is given additional authority to allow early appeals as to those claims it deems sufficiently distinct to merit early review. Furthermore, the district court is expected to explain to the court of appeals its reason for certification to assist the appellate court in avoiding unnecessary deviations from the final judgment rule. *See Cullen v. Margiotta*, 811 F.2d 698, 711 (2d Cir. 1987) ("[C]ertification must be accomplished by a reasoned ... explanation of [the trial court's] conclusion.").

### 3. Interlocutory Injunctions Under Section 1292(a)(1)

An important exception to the final judgment rule is provided by section 1292(a)(1) of title 28. It allows for interlocutory appeals from a limited class of injunctive orders. *See* 28 U.S.C. § 1292(a)(1). Its "original incarnation" was section 7 of the Evarts Act of 1891, which "allowed immediate appeals 'where, upon a hearing in equity ... an injunction shall be granted or continued by an interlocutory order or decree.'" *R.E. Dailey & Co. v. John Madden Co., Ltd.*, 983 F.2d 1068, 1992 WL 405282, at *1 (6th Cir.1992) (per curiam) (unpublished opinion) (citing Act of March 3, 1891, § 7, 26 Stat. 828); *see also* 16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure, supra*, § 3921, at 13. Prior to the 1891 Act, which also created the federal courts of appeals, no exception existed for interlocutory appeal of orders granting or denying injunctions.

In its present form, the exception for interlocutory appeals of orders involving injunctions provides in pertinent part:

(a) Except as provided [elsewhere], the courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts ... or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.

28 U.S.C. § 1292(a)(1).

Although the language of section 1292(a)(1) appears to allow immediate appeal as of right from any injunctive order issued during the pendency of the trial court proceedings, the Supreme Court and the courts of appeals have applied it more narrowly in light of the policies underlying the final judgment rule. The Court has specifically advised that, "[u]nlike some state procedures, federal law expresses the policy against piecemeal appeals. Hence, we approach [section 1292(a)(1)] somewhat gingerly lest a floodgate be opened that brings into [the] exception many pretrial orders." *Switzerland Cheese Ass'n v. E. Horne's Market, Inc.*, 385 U.S. 23, 24, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966) (internal citations omitted). The court of appeals for the Second Circuit has echoed this concern, stating:

> we must be ever mindful that [section 1292(a)(1)] was intended as a narrow exception to the policy of the basic final judgment rule.... The great advantages in the administration of federal justice *dictate against reliance on the strict letter of § 1292(a)(1)* which would cause the exception to encroach unduly upon the rule.

*Western Geophysical Co. v. Bolt Assocs.*, 463 F.2d 101, 104 (2d Cir.1972) (emphasis added); *see also Sierra Club v. Glickman*, 67 F.3d 90, 94 (5th Cir.1995) ("Because § 1292 is intended to carve out limited exceptions to the general rule that only final judgments of federal district courts are reviewable on appeal, the statute is construed narrowly.").

Section 1292(a)(1) has been limited by two narrowing constructions. The first controls the meaning of injunctive interlocutory orders covered by the exception. "[N]ot every order in the form of an injunction is an injunction under ... § 1292(a)(1)." *Chronicle Publishing Co. v. Hantzis*, 902 F.2d 1028, 1030 (1st Cir.1990) (per curiam) (quoting *Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d 875, 880 (1st Cir.1983)).

Appellate jurisdiction under section 1292(a)(1) turns on the substance of the interlocutory order, although the district court's view of the nature of the order is often useful and is considered by the appellate court. *See Etuk v. Slattery*, 936 F.2d 1433, 1440 (2d Cir.1991). "Generally, an order is appealable as an injunction [under section 1292(a)(1) ] only when it is directed to a party, is enforceable by contempt, and grants (or denies) part or all of the ultimate relief sought by the suit. Orders that in no way touch on the merits of the claim but only relate[ ] to pretrial procedures are not [appealable]." *Chronicle Publishing Co.*, 902 F.2d at 1030 (quoting *Switzerland Cheese*, 385 U.S. at 24, 87 S.Ct. 193) (internal quotations marks omitted); *see, e.g., id.* (order preventing law firm from transferring work product to plaintiff's substitute counsel directed to counsel rather than a party was not appealable under section 1292(a)(1)); *Nosik v. Singe*, 40 F.3d 592, 596 (2nd Cir.1994) (protective order that did not grant or deny any of the ultimate relief sought in complaint was not an injunction appealable under section 1292(a)(1)); *Metex Corp. v. ACS Indus., Inc.*, 748 F.2d 150, 156 (3d Cir.1984) (discovery request styled as an injunction was not appealable under section 1292(a)(1)).

Appellate courts' determining jurisdiction under section 1292(a)(1) based on the substance of the order rather than strictly on the district court's characterization has extended the reach of the provision in one respect: district court orders that "have the substantial and practical effect of injunctive orders" but which do not "technically take the form of an order relating to an injunction" have been held appealable. 19 Moore et al., *Moore's Federal Practice, supra*, § 203.10[1][b]. For example, an order denying summary judgment on a claim seeking injunctive relief is immediately appealable even though the district court has not specifically denied injunctive relief. *See Justin Indus. v. Choctaw Sec., L.P.*, 920 F.2d 262, 265–66 (5th Cir.1990); *see also United States v. Microsoft Corp.*, 56 F.3d 1448, 1456–57 (D.C.Cir.1995) (order refusing to enter consent decree calling for injunctive relief had practical effect of denying an injunction and was thus appealable under section 1292(a)(1)); *United States v. All Assets of Statewide Auto Parts, Inc.*, 971 F.2d 896, 901 (2d Cir.1992) (order refusing to vacate *ex parte* seizure warrant had practical effect of enjoining business from operating and was thus immediately appealable under section 1292(a)(1)); *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment and Allied Indus. Fund*, 967 F.2d 688, 690 (1st Cir.1992) (partial summary judgment in favor of plaintiff on claim seeking injunctive relief had practical effect of granting injunction and was thus immediately appealable under section 1292(a)(1)).

The Supreme Court has significantly curtailed the appealability of interlocutory orders that do not explicitly grant or deny injunctive relief, but that arguably have the practical effect of doing so. A showing of serious, perhaps irreparable, consequences, is required.

> For an interlocutory order to be immediately appealable under § 1292(a)(1) ... a litigant must show more than that the order has the practical effect of refusing an injunction.... Unless a litigant can show that an order of the district court might have a 'serious, perhaps irreparable, consequence, and that the order can be effectively challenged' only be immediate appeal, the general congressional policy against piecemeal

review will preclude interlocutory appeal.

*Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981); *see, e.g., Cuomo v. Barr,* 7 F.3d 17, 19 (2d Cir.1993) (no appellate jurisdiction from grant of partial summary judgment order where underlying claim sought injunctive relief because petitioner failed to demonstrate "serious, let alone irreparable consequences" from failure to take immediate appeal); *Volvo N. Am. Corp. v. Men's Int. Prof. Tennis Council,* 839 F.2d 69, 76 (2d Cir.1988) (dismissal of antitrust counts in complaint was of "serious, perhaps irreparable consequence" and could only be "effectually challenged" by immediate appeal).

The *Carson* requirements of irreparable harm and denial of effective review do not apply to interlocutory orders that expressly grant or deny injunctions. *See Casas Office Machs., Inc. v. Mita Copystar Am., Inc.,* 42 F.3d 668, 673 (1st Cir.1994) (order expressly granting plaintiff's motion for an injunction was immediately appealable under § 1292(a)(1) without having to satisfy heightened showing of irreparable harm and denial of effective review); *Cohen v. Board of Trustees,* 867 F.2d 1455, 1467 (3d Cir.1989) (same). *But see Volvo N. Am. Corp.,* 839 F.2d at 73 n. 4.

The Second Circuit has applied an additional narrowing construction, holding appealability under section 1292(a)(1) turns on a "consideration [of] the source of the district court's power to issue the [injunctive] order." *Korea Shipping Corp. v. New York Shipping Assoc.,* 811 F.2d 124, 126 (2d Cir.1987). "[I]n using the word 'injunctions' in 28 U.S.C. § 1292(a)(1) Congress had in mind traditional orders in equity" and not those orders issued under statutory provisions expressly providing for equitable relief. *Id.* (order pursuant to 29 U.S.C. § 1399(c)(2) requiring plaintiff to make payments under ERISA was "not a preliminary injunction within the meaning of [section 1292(a)(1)]").

In practice, a further restriction of section 1292(a)(1) occurs because, with respect to preliminary injunctions, parties are encouraged to conflate and try together the preliminary and final injunction issue. *See, e.g., Okpalobi v. Foster,* 190 F.3d 337, 349 (5th Cir.1999). This practice avoids multiple appeals over the same issues. Parties generally agree to this desirable practice in order to speed final disposition and to reduce costs.

### 4. Mandamus

A minor exception to the general practice of restricting appeals to final judgments arises from the authority of appellate courts to issue writs of mandamus against lower court judges. *See generally* Maryellen Fullerton, *Federal Courts Commentary: Exploring the Far Reaches of Mandamus,* 49 Brook.L.Rev. 1131, 1137–41 (1983); Robert S. Berger, *The Mandamus Power of the United States Courts of Appeals,* 31 Buff.L.Rev. 37 (1982). Mandamus is a court order directed to a public official requiring the official to perform a legal duty. Courts of appeals can issue writs of mandamus to district judges, gaining appellate jurisdiction over district court proceedings when necessary to confine "[the district] court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 661, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978) (quoting *Roche v. Evaporated Milk Assn.,* 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943)). The basis for this power is section 1651(a) of title 28, the All Writs Act. It states: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

"[T]he remedy of mandamus [affecting a district judge] is a drastic one, to be invoked only in extraordinary situations." *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34, 101 S.Ct. 188, 66

L.Ed.2d 193 (1980) (per curiam) (citations omitted). It is "not to be used as a substitute for appeal *even though hardship may result from delay and perhaps unnecessary trial.*" *Schlagenhauf v. Holder*, 379 U.S. 104, 110, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964) (emphasis added) (internal citations omitted); *see Ex parte Fahey*, 332 U.S. 258, 259–60, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947) (mandamus "against judges [is a] drastic and extraordinary remed[y]" and should not be "utilize[d] … as a substitute[.] for appeal"); *In re Alleghany Corp.*, 634 F.2d 1148, 1151 (8th Cir.1980) ("Mandamus is not to be used as a substitute for interlocutory appeal of district court orders in complex civil cases.").

The court of appeals for the Second Circuit has consistently recognized that "[s]uch writs may not be used as a mere substitute for an appeal, but rather the power should only be exercised in 'extraordinary' situations." *United States v. Victoria–21*, 3 F.3d 571, 575 (2d Cir.1993). The strong policy against mandamus as a method of a circumventing the final judgment rule explains why it is so seldom used. The court of appeals for the Second Circuit has accepted review by mandamus in only eleven cases over the past decade (from mid–1989 to present). *See* Letter from Jean Nahlen, Second Circuit Clerks Office, dated Sept. 27, 1999.

"In order to [e]nsure that [mandamus] will issue only in extraordinary circumstances, [the Supreme Court] has required that a party seeking issuance have no other adequate means to attain the relief he desires[.]" *Allied Chemical,* 449 U.S. at 35, 101 S.Ct. 188. Even then, the petitioner's " 'burden [is to show] that his right to issuance of the writ is clear and indisputable.' " *Id.; see also Mallard v. United States District Court for Southern District of Iowa*, 490 U.S. 296, 309, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989) ("To ensure that mandamus remains an extraordinary remedy, petitioners must show that they lack adequate alternative means to obtain the relief they seek, and carry 'the burden of

showing that [their] right to issuance of the writ is clear and indisputable.' " (internal citations omitted)). Moreover, where these criteria are established the court of appeals still retains discretion to decide whether to issue the writ. *See Kerr v. United States District Court*, 426 U.S. 394, 403, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *see also Lusardi v. Lechner*, 855 F.2d 1062, 1070 (3d Cir.1988); 19 Moore et al., *supra,* § 204.02[7], at 204–14 ("[Mandamus] must be exercised with discretion and the court must not lose track of the principles of the final judgment rule.").

The first requirement—namely, that there must be "no other adequate means to attain the relief"—operates as a substantial bar to mandamus. So long as the moving party can obtain review of the decision and reversal following a final judgment, mandamus is inappropriate. *See* 19 Moore et al., *Moore's Federal Practice, supra,* § 204.02[6], at 204–13. In *Allied Chemical,* for example, the Supreme Court held that mandamus was not justified by a district judge's order granting a new trail following a four week jury trial which had awarded millions of dollars to the plaintiff. The Court pointed out that the plaintiff did in fact have "other adequate means" "to seek review of the propriety of such an order on direct appeal" because he could challenge the grant of a new trial after a final judgment was entered following the retrial. *Allied Chem.,* 449 U.S. at 36, 101 S.Ct. 188. Similarly, the court of appeals for the Second Circuit has held that mandamus was not appropriate after a district judge denied defendants' motion to return property seized by the government before trial. *See Victoria–21*, 3 F.3d at 575–76. The court reasoned that adequate review of the seizure would be "available upon final judgment." *Id.* at 576; *see also Communication Workers of America v. Am. Tel. & Tel.*, 932 F.2d 199, 213 (3d Cir.1991) ("The fact that [the defendant] may have to arbitrate before taking [an] appeal is not a basis for man-

damus" when the order can "ultimately be appealed").

█ The second requirement—namely, that petitioner's right to relief must be clear and indisputable—also provides a high barrier to mandamus. A showing of error alone is insufficient to meet this condition. *See Will v. United States*, 389 U.S. 90, 104, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967) ("Mandamus, it must be remembered, does not 'run the gauntlet of reversible errors.'" (citations omitted)). The issue is not whether the district judge correctly determined the issue of law, but whether the action was "clear[ly] and indisputab[ly]" beyond the trial court's power. *In re Alleghany Corp.*, 634 F.2d at 1150. "Whereas a simple showing of error may suffice to obtain a reversal on direct appeal, to issue a writ of mandamus under such circumstances 'would undermine the settled limitations upon the power of an appellate court to review interlocutory orders.'" *Will v. Calvert Fire Insurance Co.*, 437 U.S. at 661, 98 S.Ct. 2552 (citations omitted); *see also Allied Chem.*, 449 U.S. at 35, 101 S.Ct. 188.

Privilege claims have generated a major branch of mandamus jurisprudence. *See, e.g., Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456 (3d Cir.1996) (privilege claim for hospital incident reports). While the availability of appeal after final judgment generally forecloses the first condition for mandamus, "[w]here a privilege is asserted ... such relief usually is not 'adequate.'" *Hahnemann*, 74 F.3d at 461. The court of appeals for the Second Circuit has utilized mandamus in cases involving privilege claims where there is a potential for irreparable loss of a litigant's confidentiality privilege absent immediate appellate review. *Salomon Brothers Treasury Litig. v. Steinhardt Partners (In re Steinhardt Partners, L.P.)*, 9 F.3d 230 (2d Cir.1993) (work-product privilege claim over legal memorandum); *Chase Manhattan Bank v. Turner & Newall, PLC*, 964 F.2d 159 (2d Cir.1992) (attorney-client privilege claim over corporate documents); *von Bulow v.*

*von Bulow (In re von Bulow)*, 828 F.2d 94 (2d Cir.1987) (waiver of attorney-client privilege claim). Once the door to view privileged material has been wrongly opened, the secret has been disclosed and there is little gain in relocking the chamber.

Because it represents an affront to the values underlying the final judgment rule, the drastic remedy of a writ of mandamus must be used sparingly and only in truly extraordinary cases. *See also Allied Chem.*, 449 U.S. at 35, 101 S.Ct. 188 ("A judicial readiness to issue the writ of mandamus in anything less than an extraordinary situation would 'run the real risk of defeating the very policies sought to be furthered by th[e] judgment of Congress [in adopting the final judgment rule].'"); *Communication Workers*, 932 F.2d at 208 ("Because its use is contrary to the principles of finality, 'the writ is seldom issued and its use is discouraged.'" (citation omitted)); *In re Alleghany Corp.*, 634 F.2d 1148, 1150 (8th Cir.1980) ("The legislative policies of section 1291 finality would be defeated if mandamus were issued in anything less than an extraordinary situation."). First of all, mandamus can "indisputably contribute[ ] to piecemeal ... litigation." *Allied Chem.*, 449 U.S. at 35, 101 S.Ct. 188. Its use generates an increased workload for the court of appeals and delays a litigant's opportunity to gain a final judgment from the district court. *See Kerr*, 426 U.S. at 403, 96 S.Ct. 2119 (advising against use of mandamus because "particularly in an era of excessively crowded lower court dockets, it is in the interest of the fair and prompt administration of justice to discourage piecemeal litigation").

By subjecting district court orders to immediate appellate review, mandamus also undermines the independence of the district judge. This is particularly so where novel and potentially controlling legal issues are involved. Congress designed section 1292(b), and not mandamus, as the vehicle for interlocutory review in

these instances. Section 1292(b) envisions a collaborative relationship between the trial court and the appellate court, with each playing an active role in determining whether interlocutory review is warranted to address controlling but novel legal issues. The use of mandamus in such instances, therefore, undermines the first-line discretion Congress vested in district judges. *See, e.g., Arizona v. United States Dist. Ct (In re Cement Antitrust Litigation)*, 688 F.2d 1297, 1301 (9th Cir.1982) (unrestrained use of mandamus "subverts the policies underlying the finality rule [and] the carefully limited congressional scheme governing interlocutory appeals"); *see also In re Alleghany Corp.*, 634 F.2d 1148, 1151 (8th Cir.1980) ("Mandamus is not to be used as a substitute for [section 1292(b) ] interlocutory appeal of district court orders in complex civil cases.").

The decision to grant or deny mandamus, in any event, may take account of the trial-court judge's view of the matter. Rule 21 of the Federal Rules of Appellate Procedure permits bringing the trial court judge into the process. *See* Fed.R.App.P. 21. It requires a party seeking mandamus to "provide a copy [of the petition] to the trial-court judge." *Id.* 21(a)(1). It also constructs a channel for appellate-trial court dialogue on the issue. It reads:

> The court of appeal may invite or order the trial-court judge to address the petition.... The trial-court judge may request permission to address the petition but may not do so unless invited or ordered to do so by the court of appeals.

*Id.* 21(b)(4).

### 5. Class Certification Orders Under Fed.R.Civ.P. 23(f)

The most recent exception to the final judgment rule is provided by Rule 23(f) of the Federal Rules of Civil Procedure. Since 1998 it has allowed an interlocutory appeal at the discretion of the court of appeals for class certification orders. *See* Fed.R.Civ.P. 23(f). It reads:

> A court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under this rule if application is made to it within ten days after entry of the order. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

*Id.*

The Committee Note accompanying Rule 23(f) states that "[t]he court of appeals is given unfettered discretion whether to permit the appeal, akin to the discretion exercised by the Supreme Court in acting on a petition for certiorari." The courts of appeals are to exercise the discretion ·vested in them with circumspection. *See Blair v. Equifax Check Serv., Inc.*, 181 F.3d 832 (7th Cir.1999) (suggesting criteria for interlocutory appeals of class certification orders).

Courts of appeals are specifically encouraged to rely on the advise of the district court in deciding whether to take an interlocutory appeal. The Committee Note to Rule 23(f) states that "the district court often can assist the parties and court of appeals by offering advice on the desirability of appeal." It goes on to point out that

> the district court, having worked through the certification decision, often will be able to provide cogent advice on the factors that bear on the decision whether to permit appeal. This advice can be particularly valuable if the certification decision is tentative. Even as to a firm certification decision, a statement of reasons bearing on the probable benefits and costs of immediate appeal can help focus the court of appeals decision, and may persuade the disappointed party that an attempt to appeal would be fruitless.

*Id.* 23(f) (Committee Note for 1998 amendments).

### 6. Other Exceptions

There are also a very limited number of situation-specific exceptions to the final judgment rule. They are extremely narrow and warrant only passing mention. Included are: interlocutory orders denying motions for arbitration under the Federal Arbitration Act, *see* 9 U.S.C. § 16(a); interlocutory orders appointing receivers or refusing to wind up receiverships, *see* 28 U.S.C. § 1292(a)(2); interlocutory orders determining the rights and liabilities of parties to admiralty cases, *see* 28 U.S.C. § 1292(a)(3); and interlocutory orders that result in hardship property transfers, *see Forgay v. Conrad,* 47 U.S. (6 How.) 201, at 203–04, 12 L.Ed. 404 (1848); *see also* 15A Wright et al., *Federal Practice and Procedure, supra,* § 3910, at 306.

### C. Interlocutory Orders Under Section 1292(b)

As noted above, section 1292(b) allows permissive appeals of non-final interlocutory orders that involve (1) a controlling question of law over which there is (2) a substantial ground for difference of opinion and which (3) will likely materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b). Merely satisfying all three of these criteria will not insure an interlocutory appeal. The moving party must obtain certification from the district court and then obtain agreement to hear the appeal from the court of appeals. *See id.*

Together, these hurdles operate to sharply limit the use of section 1292(b) as a means of establishing appellate jurisdiction. As the court of appeals for the Second Circuit has repeatedly advised, section 1292(b) was designed to be a rarely used exception to the final judgment rule. *See, e.g., Koehler v. Bank of Bermuda Ltd.,* 101 F.3d 863, 865 (2d Cir.1996). ("Section 1292(b)'s legislative history reveals that although that law was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal ap-

peals."). In practice it has been used sparingly in the Second Circuit. *See id.* at 866. Over the past decade, there have been slightly more than 40,000 appeals heard by the court of appeals for the Second Circuit from final judgments. *See* Letter from Jean Halen, Second Circuit Clerks Office, dated Sept. 27, 1999. During that same period, only 138 interlocutory orders were certified under section 1292(b) for appeal, of which the court of appeals agreed to hear only 93. *Id.*

### 1. History

Congress enacted section 1292(b) in 1958. It grew out of a suggestion by Judge Jerome Frank at the 1951 meeting of the Judicial Conference of the United States. Judge Frank's proposal would have allowed interlocutory appeals by permission of the court of appeals alone from any interlocutory order when "necessary or desirable to avoid substantial injustice." Judicial Conference of the United States, *Report of the Proceedings of a Special Session,* March 20–21, 1952, at 203 (published with Judicial Conference of the United States, *1952 Annual Report*); *see Swint v. Chambers County Comm'n,* 514 U.S. 35, 47 n. 4, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995).

The Judicial Conference appointed a committee headed by Judge John J. Parker to gather the views of the federal judges. *Gottesman v. General Motors Corp.,* 268 F.2d 194, 196 (2d Cir.1959) (Clark, C.J.). Judge Frank's formulation was generally opposed by the federal judges as "unduly encouraging fragmentary and frivolous appeals with evils and delays incident thereto." *Id.* (citations omitted). "Although Judge Frank's particular proposal was rejected, after extensive investigation the committee reported in favor of a draft statute in the form of § 1292(b) and the Judicial Conference approved the report at its 1953 meeting." *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 753–54 (3d Cir.1974) (en banc). The draft was introduced by Chief Judge Charles E. Clark of the Second Circuit. *See* S.Rep.

No. 85–2434 (1958). It was transmitted to Congress in 1957 where it was enacted in 1958 exactly as submitted. *Id.*

### 2. Discretion of District Court

The wide discretion available to the district court judge in certifying orders for interlocutory appeal under section 1292(b) has generally not been remarked on in this circuit. It is well settled that, at a minimum, the district court judge must be of the opinion that the three statutory criteria laid out in section 1292(b) are satisfied, namely that the order (1) involves a controlling question of law, (2) about which there is a substantial ground for difference of opinion, and (3) that an immediate appeal would materially advance the ultimate termination of the litigation. *See White v. Nix,* 43 F.3d 374, 376–77 (8th Cir.1994) (district court abused its discretion in certifying an order for appeal where none of the criteria existed).

Defendants lay out a somewhat novel understanding of the discretion available to the district court judge in considering a certification request under section 1292(b). *See* Defs.' Suppl.Mem.Supp.Cert. at 2, 6 n. 1. They contend that the district court judge lacks discretion to deny a certification request if the three criteria are satisfied. They rely on the language of section 1292(b) which does seem to speak in mandatory terms. *See* 28 U.S.C. § 1292(b) ("When a district judge ... *shall* be of the opinion [that the three criteria are satisfied], he *shall* so state in writing." 28 U.S.C. § 1292(b) (emphasis added)).

The language of section 1292(b), however, is not decisive. As the discussion of the final judgment rule and its principle exceptions has already established, the Supreme Court and the courts of appeals have generally looked beyond statutory language to limit the exceptions. *See supra* Part III.B. Exceptions have been curtailed because of the historic federal policy of prohibiting piecemeal appeals even in the face of broad statutory language. *See, e.g., Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 67 L.Ed.2d 59

(1981) (construing section 1292(a) narrowly to ensure that appeal "will be available only in circumstances where [it] will further the statutory purpose of 'permit[ting] litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence' ") (quoting *Baltimore Contractors v. Bodinger,* 348 U.S. 176, 181, 75 S.Ct. 249, 99 L.Ed. 233 (1955)); *City of Fort Madison, Iowa v. EMERALD LADY, O.N. 972894,* 990 F.2d 1086, 1088 (8th Cir.1993) ("[E]xceptions to the final judgment rule are to be strictly and narrowly construed.").

The legislative history, congressional design and case law indicate that district court judges retain unfettered discretion to deny certification of an order for interlocutory appeal even where the three legislative criteria of section 1292(b) appear to be met. *See, e.g.,* Berger, *supra,* at 38 n. 9 ("The district judge has virtually absolute authority to deny a § 1292(b) certificate."); Martin H. Redish, *The Pragmatic Approach to Appealability in the Federal Courts,* 75 Colum.L.Rev. 89, 109 (1975) ("The district courts enjoy generally absolute discretion to deny a section 1292(b) certificate, and the procedures for obtaining appellate court certification once the district court certificate has been issued are comparatively cursory.").

#### a. Legislative History

Much of the legislative history of section 1292(b) consists of letters and statements by members of the Judicial Conference. They are the "best indication" of legislative design because, as already indicated, the provision was adopted by Congress exactly as drafted and submitted by the Judicial Conference. *See Katz,* 496 F.2d at 754.

At the same time that Congress was considering section 1292(b), it had before it Judge Frank's proposal to place authority to allow interlocutory appeals solely in the hands of the courts of appeals. (This was the same proposal which had been rejected by the Judicial Conference in 1951.) *See*

*Swint,* 514 U.S. at 47 n. 4, 115 S.Ct. 1203. Judge Frank's proposal relegated the district judge to advising the court of appeals on the propriety of an interlocutory appeal.

It shall be the duty of the district judge to state in writing whether in his opinion the appeal is warranted.... The court of appeals shall take into account, but shall not be bound by, such statement in exercising its discretion.

*Id.* (quoting undated letter from study committee to the Tenth Circuit Judicial Conference, in S.Rep. No. 85–2434, at 8–9 (1958) [hereinafter "Tenth Circuit Letter"] ).

The key distinction between Judge Frank's proposal and section 1292(b) is the requirement of district court certification. As the Supreme Court has reasoned, by rejecting Judge Frank's proposal and instead requiring district court certification as a condition of appellate jurisdiction, "Congress thus chose to confer on district courts first line discretion to allow interlocutory appeals." *Id.* at 47; (*see* 15A Wright et al., *Federal Practice and Procedure, supra,* § 3911, at 369) (district court and court of appeals have "equally unfettered discretion" under section 1292(b)).

The basis for rejecting Judge Frank's proposal and requiring district court certification was explained in a letter from several judges:

*only the trial court can be fully informed of the nature of the case and the peculiarities* which make [it] appropriate to interlocutory review at the time desirability of the appeal must be determined; and he is probably the only person able to forecast the course of the litigation with any degree of accuracy.

Tenth Circuit Letter, *supra,* at 8–9 (emphasis added). The present certification requirement was thus adopted to grant the district court authority to consider the multitude of factors peculiar to any given case which make an interlocutory appeal appropriate or inappropriate.

In order to effectively make these ad hoc calculations, the district court must necessarily have the power to consider factors beyond the minimum criteria established in section 1292(b). A contrary understanding would hamstring the district judge's ability to consider the "peculiarities" of the case.

b. Statutory Design

A construction of section 1292(b) that vests district court judges with discretion in certifying orders for interlocutory appeal is consistent with the purposes underlying the provision. Section 1292(b) was designed to provide an "efficient" mechanism for appeal of interlocutory orders in "exceptional cases." Tenth Circuit Letter, *supra,* at 8–9 ("Too rigid a bar against such appeals from interlocutory orders may result in injustice by preventing at an early stage the final decision of an issue which might be determinative of the case and burdening the parties...."); *id.* ("appeal from interlocutory orders thus provided should and will be used only in exceptional cases").

In order to determine whether an interlocutory appeal is an efficient use of judicial resources, the district judge needs to weigh numerous factors not specifically provided for in the statute. Among these factors are: (1) the time an appeal would likely take; (2) the need for a stay pending appeal and the effect on the litigation, including discovery, that would result from a stay; (3) the probability of reversal on appeal; (4) the effect of a reversal on the remaining claims; (5) the benefit of further factual development and a complete record on appeal, particularly in rapidly developing or unsettled areas of the law; and (6) the probability that other issues may moot the need for the interlocutory appeal.

Evidence that section 1292(b) is discretionary and not mandatory, even where the statutory criteria are satisfied, can also be gleaned from the congressional design to limit appeals to truly "exceptional

cases." *Id.; see Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 25 (2d Cir.1990) (only "exceptional circumstances" justify section 1292(b) certification). District court judges must have the flexibility to decide in enormously diverse and particularized litigations which cases are "extraordinary." The court of appeals for the Third Circuit advised trial courts as much shortly after the passage of section 1292(b): "[i]t is quite apparent ... that Congress intended that section 1292(b) should be sparingly applied.... Both the district judge and the court of appeals are to exercise *independent judgment* in each case and are not to act routinely." *Milbert v. Bison Lab., Inc.,* 260 F.2d 431, 433 (3d Cir.1958) (emphasis added).

The court of appeals for the Second Circuit has echoed the need for district court judges to use discretion in certifying cases for interlocutory appeal, expressly "urg[ing] district courts to exercise great care in making § 1292(b) certification." *Westwood Pharm., Inc. v. National Fuel Gas Distrib. Corp.,* 964 F.2d 85, 89 (2d Cir.1992). The command that district courts use "independent judgment" and "exercise great care" requires discretion to consider which cases warrant interlocutory appeal.

Furthermore, a discretionary approach to certification under section 1292(b) is consistent with the general congressional desire to allow district court judges independence and flexibility to manage the cases before them. *Cf. Van Cauwenberghe v. Biard,* 486 U.S. 517, 521 n. 3, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988) ("Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system.") (quoting *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981)); *see also* Civil Justice Reform Act of 1990, 28 U.S.C. § 473 (requiring district court judges to adopt litigation expense and delay reduction plans); Fed.R.Civ.P. 16 (providing flexibility to district court judge in managing cases).

c. Case Law

Cases addressing district court certification have unanimously characterized it as discretionary even where the statutory criteria are met. For example, the Third Circuit has held that "[t]he *certification procedure* is not mandatory; indeed, permission to appeal is wholly within the discretion of the courts, even if the criteria are present." *Bachowski v. Usery,* 545 F.2d 363, 368 (3d Cir.1976) (emphasis added). Examples of other courts noting as much abound. *See, e.g., Armstrong v. Martin Marietta Corp.,* 138 F.3d 1374, 1387 (11th Cir.1998); *Executive Software N. Am., Inc. v. Dist. Ct.,* 24 F.3d 1545, 1550 (9th Cir.1994); *Rich v. Bud's Boat Rental, Inc.,* No. 96–3279, 1997 WL 785669, at *2 (E.D.La. Dec. 18, 1997); *Rushton v. Saratoga Forest Products, Inc. (In re Americana Expressways),* No. 99C25142, 1995 WL 500526, at *2 (D.Utah Aug. 2, 1995); *Reich v. NationsBank of Georgia,* No. 92CV1474HTW, 1995 WL 389614, at *1 (N.D.Ga. May 10, 1995); *Harter v. GAF Corp.,* 150 F.R.D. 502, 517 (D.N.J.1993); *Cummins v. EG & G Seal-ol, Inc.,* 697 F.Supp. 64, 69 (D.R.I.1988); *In re Oil Spill by the "Amoco Cadiz",* 1987 WL 14808, at *1 (N.D.Ill. Nov.6 1987); *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 611 F.Supp. 281, 284 n. 2 (S.D.N.Y.1985); *see also Trivelloni–Lorenzi v. Pan Am. World Airways, Inc.,* 821 F.2d 1147, 1167 n. 34 (5th Cir.1987); *Etienne v. Wolverine Tube, Inc.,* 15 F.Supp.2d 1060, 1062 (D.Kan.1998); *Young v. Sheetz, Inc.,* 998 F.Supp. 670, 673 (W.D.Va.1998); *Kirkland & Ellis v. CMI Corp.,* No. 95C7457, 1996 WL 674072, at *2 (N.D.Ill. Nov. 19, 1996). These cases confirm the judiciary's understanding that section 1292(b) vests the district court with unlimited authority to decide whether to certify an order for interlocutory appeal even where the three statutory criteria are met.

The court of appeals for the Second Circuit has yet to explicitly address the question of whether district judge's have discretion to deny certification orders where the statutory criteria appears to be satisfied. Its approach in a number of mandamus opinions, however, strongly suggests that such broad discretion exists. In an opinion by Judge Clark, who authored section 1292(b), it held that the court of appeals has "no right or desire to control the trial judge's exercise of discretion in denying leave for an interlocutory appeal." *Hirsch v. Bruchhausen*, 284 F.2d 783, 786 (2d Cir.1960) (Clark, J.). In *D'Ippolito v. Cities Service Co.*, 374 F.2d 643, 649 (2d Cir.1967), the court concluded, "we cannot conceive that we would ever mandamus a district judge to certify an appeal under 28 U.S.C. § 1292(b) in plain violation of the Congressional purpose that *such appeals should be heard only when both the courts concerned so desire.*" *Id.* (emphasis added); *see also Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir.1996) (section 1292(b) "allows for an appeal from an otherwise unappealable interlocutory order *upon consent* of both the district court and the court of appeals" (emphasis added)); *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1344 (2d Cir.1972) ("Congress plainly intended that an appeal under § 1292(b) should lie only when the district court and the court of appeals *agreed on its propriety*. It would wholly frustrate this scheme if the court of appeals could coerce decision by the district judge." (emphasis added)).

The court of appeals' reasoning in *Marisol v. Giuliani*, 104 F.3d 524, 529 (2d Cir.1996), also supports a conclusion that district court judges have untrammeled discretion to deny certification. *Marisol* involved the question of whether the district court has discretion to recertify an order for interlocutory appeal if the moving party misses the 10–day period to seek leave of the court of appeals. The court of appeals "reject[ed] the contention that an appellant's negligence completely strips

the district court of discretion to recertify an interlocutory order." *Id.* at 529. Rather, the court of appeals advised that district courts should consider the "ultimate efficiency goals of § 1292(b)" in deciding whether to recertify the order. *Id.* The court's reasoning in *Marisol* cannot be reconciled with an interpretation of section 1292(b) that makes certification mandatory when the statutory criteria are met. If, in fact, section 1292(b) limits district courts to considering only the three criteria enunciated in the provision, then the district court's statutorily curtailed role should remain equally curtailed for a second certification request, with only the court of appeals having discretion to consider the propriety of taking an appeal on the recertified order. A better reading of *Marisol* is that a district court, in exercising its *independent discretion* to certify an order for interlocutory appeal should consider, among other factors, whether the parties failed to properly pursue an earlier certification request.

### d. Relationship to Rule 54(b)

The operation of Rule 54(b) of the Federal Rules of Civil Procedure provides evidence that section 1292(b) vests district court judges with broad discretion in certifying orders for interlocutory appeal. Section 1292(b) and Rule 54(b) are the only exceptions to the final judgment rule that require certification of the district court judge before an appeal can be taken. Chief Judge Clark, the author of section 1292(b), has explicitly stated that section 1292(b) was modeled on Rule 54(b). *Gottesman v. General Motors Corp.,* 268 F.2d 194, 196 (2d Cir.1959) (Clark, C.J.) (section 1292(b) "was to apply the principle then recently embodied in amended F.R. 54(b) of allowing an appeal ... when both trial and appellate courts agreed on its propriety").

As is the case with section 1292(b), Rule 54(b) established criteria that must be satisfied before a district judge can certify an order for appeal. The order must be a

true final judgment, and it must involve a claim separate and distinct from the claims remaining before the district court. Aside from these two foundational requirements, the district court is free in its discretion to certify or not to certify the order for appeal. *See, e.g., Ryan v. Occidental Petroleum Corp.*, 577 F.2d 298, 303 (5th Cir. 1978) ("Rule 54(b) envisions that adjudication as to some but not all claims in a multiple-claim suit are to be final and appealable only upon an exercise of the district court's discretion[.]"); *International Controls Corp. v. Vesco*, 535 F.2d 742, 748 (2d Cir.1976) ("[A Rule 54(b)] procedure is not required in multi-claim suits, but it is permitted if the district court makes the proper certification."). As a leading commentator has noted, Rule 54(b) "does not require that a judgment be entered when the court disposes of one or more claims or terminates the action as to one or more parties. Rather, it *gives the [trial] court discretion* to enter a final judgment in these circumstances[.]" 10 Wright et al., *Federal Practice and Procedure, supra,* § 2654, at 36 (emphasis added).

Given that section 1292(b) was modeled on Rule 54(b), it stands to reason that, as with Rule 54(b), the statutory criteria in section 1292(b) were designed to limit the authority of the district court to certify an order for interlocutory appeal; they were not written to mandate certification. *See, e.g., Swint v. Chambers County Comm'n,* 514 U.S. 35, 46, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995) ("Congress added ... § 1292(b) [to] accord[ ] the district courts *circumscribed authority* to certify for immediate appeal interlocutory orders deemed pivotal and debatable." (emphasis added)).

In short, the legislative history, statutory design, case law, and relationship to Rule 54(b)—individually and together— make clear that district court judges have broad discretion to deny certification even where the statutory criteria are met.

This broad discretion does not mean that the district judge should act arbitrari-

ly in granting or denying section 1292(b) certification. Exercise of discretion should be rational and reasoned even though nonreviewable. *See generally* Maurice Rosenberg, *Judicial Discretion of the Trial Court, Viewed from Above,* 22 Syracuse L.Rev. 635 (1971).

## IV DEFENDANTS' SECTION 1292(b) CERTIFICATION MOTIONS

Defendants argue in each of these cases that the statutory criteria for certification have been met, relying in part on related cases where certification was granted. *See* Defs' Reply Mem. of Law Supp. Cert. (citing *Arkansas Blue Cross and Blue Shield v. Philip Morris, Inc.,* 1999 WL 592671, at *1 (N.D.Ill. Aug. 2, 1999)); *see also Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,* 191 F.3d 229 (2d Cir.1999) (interlocutory appeal under section 1292(b)).

Assuming, without deciding, that section 1292(b)'s explicit requirements are satisfied, the instant cases are, in any event, inappropriate for interlocutory appeal. *See* 16 Wright et al., *Federal Practice and Procedure, supra,* § 3930, at 442 ("Uniformity of application is not to be expected [under section 1292(b)], even in cases presenting exactly the same issue in the same apparent context."); *see also Abortion Rights Mobilization, Inc. v. Regan,* 552 F.Supp. 364, 366 (S.D.N.Y.1982) ("[Section 1292(b) certification] is not intended as a vehicle to provide early review of difficult rulings in hard cases.").

The unique factual and legal issues raised in each of these cases counsel against certifying them for interlocutory appeal. Each case involves issues of causation under RICO which require highly fact specific inquiries. *See Oneida Indian Nation v. County of Oneida,* 622 F.2d 624, 628 (2d Cir.1980) ("[T]he purpose of section 1292(b) is not to offer advisory opinions 'rendered on hypotheses which evaporate in the light of full factual development.'") (quoting *Paschall v. Kansas*

*City Star Co.,* 605 F.2d 403, 406 (8th Cir. 1979)). "The legal concept of proximate causation [involved in these cases] mandates a multi-faceted and highly fact specific inquiry." *The National Asbestos Workers Med. Fund v. Philip Morris, Inc.,* 1999 WL 706113, —— F.Supp.2d —— (E.D.N.Y.1999); *see Laborers Local 17,* 191 F.3d at 235 ("Proximate cause is an elusive concept, one 'always to be determined *on the facts* of each case upon mixed considerations of logic, common sense, justice, policy and precedent.'" (quoting William Keeton et al., *Prosser & Keeton on the Law of Torts* § 42, at 279 (5th ed. 1984))). Additional factual development is warranted to resolve unique causation questions in the shadowy areas of developing RICO jurisprudence.

Appeal at this stage of the litigation, before full development of the facts, would significantly undermine the ability of the trial and appellate courts—both the court of appeals and the Supreme Court—to fully consider both the similarities and differences between the injuries of plaintiffs in the instant cases and those alleged in cases such as *Laborers Local 17. See, e.g., State of California v. Harvier,* 700 F.2d 1217, 1219 (9th Cir.1983) ("[W]hen a legal question 'has serious consequences and is an issue upon which there is a diversity of opinions . . . [t]he developmental process before the district court would provide [the court of appeals] with a better foundation upon which to make [its] decision.'" (quoting *Quechan Tribe v. Rowe,* 531 F.2d 408, 412 (9th Cir.1976) (Wallace, J., concurring))); *Allied Princess Bay Co. v. Atochem N. Am., Inc.,* No. CV924146, 1992 WL 135235, at *2 (E.D.N.Y. May 29, 1992) ("[I]nterlocutory appeal is currently inappropriate because the facts of the case have not yet fully developed. Judicial economy would not be advanced by appellate review at this time."). With respect to the Blues, for example, while there may be some similarities with the plaintiffs in *Laborers Local 17,* there are also significant differences between the operation and role of the Blues in the delivery of this coun-

try's health care services that could support the conclusion that injury to the Blues was a proximate result of Tobacco's alleged conduct. *See Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 272 n. 20, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992).

An immediate interlocutory appeal would also unduly interfere with discovery which is now well underway in each case. It is hardly an exaggeration to compare discovery in mass tort cases such as these to a moving oil tanker. To start both must overcome significant inertia, but once underway neither is amenable to sudden stops or changes in direction. Suspending discovery for many months while appeals are taken would constitute a significant burden on the timely and efficient disposition of the cases. In this connection it should be noted that in less than a year each case will have gone to trial, yielding a final judgment on a complete record for the court of appeals to review. *See Caldwell v. Seaboard Coastline R.R.,* 435 F.Supp. 310, 312 (W.D.N.C.1977) (declining to certify appeal of two year old case where discovery was nearly complete because an "appeal now can hardly 'advance the ultimate termination of this case'"); *Struthers Scientific and International Corp. v. General Foods Corp.,* 290 F.Supp. 122, 130 (S.D.Tex.1968) (declining to certify because "appeal would more likely tend to delay rather than advance termination of the litigation" and stating that *"[t]he parties would be better advised to expend their energies completing discovery rather than taking appeals"* (emphasis added)).

The lengthy delay of trial court proceedings pending the appeal, the probability that an interlocutory appeal will require lengthy appellate consideration on an incomplete record, and the likelihood that continued district court proceedings might moot the issues now sought to be appealed, further counsel against interlocutory review at this stage. *See Filbern v. Habitat for Humanity, Inc.,* 57 F.Supp.2d 833, 836

(W.D.Mo.1999) ("Section 1292(b) is designed to allow for sparing exceptions to the final judgment rule when interlocutory appeal can minimize 'the total burdens of litigation on the parties and the judicial system.'" (quoting *TCF Banking and Savings, F.A. v. Arthur Young & Co.*, 697 F.Supp. 362, 366 (D.Minn.1988))).

## V  CONCLUSION

The motions to certify the August 2, 1999 order in *Blue Cross* and *National Asbestos* and the August 11, 1999 order in *H.K. Porter* having been denied, discovery shall continue with every effort made to limit the costs and to utilize the materials already available from other tobacco litigations in state and federal courts.